**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

ENDERSON TORRES,

        Petitioners,

  v.

TODD BLANCHE, *et al.*,

        Defendants.

Case No. 2:26-cv-00637-RFB-MDC

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Enderson Torres' Second Amended Petition for Writ of Habeas Corpus (ECF Nos. 23, 29). Through it, Mr. Torres argues that his ongoing detention is unlawful because his removal from the United States is not reasonably foreseeable. For the following reasons, the Court agrees and awards Mr. Torres a writ of habeas corpus.

## I.    PROCEDURAL HISTORY

On March 6, 2026, Petitioner Enderson Torres filed a verified petition for writ of habeas corpus, an application to proceed *in forma pauperis* ("IFP"), and a motion for appointment of counsel. See ECF No. 1.

That same day, the Court granted Mr. Torres' IFP application and appointed the Federal Public Defender ("FPD") to represent him. See ECF No. 3. The Court also screened Mr. Torres' petition and determined that he had established a *prima facie* case for relief. Accordingly, to preserve jurisdiction, the Court ordered Respondents not to transfer Petitioner to a detention center outside of this judicial district absent leave of the Court. See id. The Court also ordered Respondents to show cause for Petitioner's detention within eleven days. See id.; see also 28 U.S.C. § 2243 ("A court... entertaining an application for a writ of habeas corpus shall forthwith

award the writ or issue an order directing the respondent[s] to show cause why the writ should not be granted."). Respondents failed to do so.

On March 26, 2026, Mr. Torres filed an Amended Petition for Writ of Habeas Corpus. See ECF No. 9. On April 13, 2026, Mr. Torres filed an Emergency Motion to Enforce, informing the Court that, on that same day, Respondents had given Mr. Torres notice of their intent to remove him to Mexico, contravening the Court's March 6, 2026, Order. See ECF No. 13. Because Mr. Torres' removal order had become administratively final, the Court ordered Mr. Torres to show cause why this case was not moot. See ECF No. 14. On April 22, 2026, the Court granted Mr. Torres leave to amend his petition. See ECF No. 22.

On April 24, 2026, Mr. Torres filed his Second Amended Petition for Writ of Habeas Corpus. See ECF No. 23. Respondents filed a response on May 6, 2026, arguing that Mr. Torres' Second Amended Petition was moot. See ECF No. 26. The Court rejected Respondents' arguments and granted Mr. Torres leave to file a Supplement to his Second Amended Petition. See ECF No. 28. Mr. Torres then filed a Supplement to his Second Amended Petition for Writ of Habeas Corpus on July 20, 2026 (the "Petition"). See ECF No. 29. Respondent John Mattos filed a response on July 24, 2026, indicating that he takes no position on the relief requested by Mr. Torres. See ECF No. 30. The remainder of Respondents ("Federal Respondents") have not filed a response. The Court's Order on Mr. Torres' Petition follows below.

## II.   JURISDICTION

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl.2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citations omitted), superseded by statute on other grounds as stated

in Nasrallah v. Barr, 590 U.S. 573, 580 (2020). Accordingly, this Court has jurisdiction to grant writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Trump v. J.G.G., 604 U.S. 670, 672 (2025) (clarifying that an immigration detainee's challenge to their confinement, and removal, falls "within the 'core' of the writ of habeas corpus") (per curium) (citations and quotation marks omitted); see also Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention...."); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

Although habeas corpus is "civil in nature[,] and the petitioner bears the burden of proving that his detention is illegal[,]" Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950), the mechanics of habeas proceedings are unique. See Harris v. Nelson, 394 U.S. 286, 294–95 (1969). When a court confronts a viable habeas petition, it must either award the writ or order respondent(s) to show cause—i.e., to "make a return certifying the true cause of [] detention." 28 U.S.C. § 2243; see also Harris, 394 U.S. at 298–99 (citation omitted). Since habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual allegations should be taken at face value. See Carlson, 186 F.2d at 188 (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)) (citations omitted). Similarly, the certified, undisputed allegations of respondents should also be accepted as true unless they are contradicted by relevant evidence. See id. To reach the truth of these matters, district courts "may fashion appropriate modes of procedure" to "summarily hear and determine the facts[] and dispose of the matter as law and justice require." Harris, 394 U.S. at 299 (quoting 28 U.S.C. § 2243) (quotation marks omitted). In fact, it is "the inescapable obligation of the courts" to vindicate their "habeas corpus jurisdiction" by fashioning "methods for securing facts where necessary." Id.

### III.   FACTUAL BACKGROUND

As a preliminary matter, the Court makes the following findings of fact based on the

Parties' undisputed factual allegations and the evidence they supply. See supra Part II (describing the fact-finding process in habeas proceedings).

Mr. Torres is a Venezuelan citizen See ECF No. 9 at 3. In Venezuela, Mr. Torres and his family were targets of political persecution and violence. See id. In July of 2023, Mr. Torres and his family fled to the United States. See id. Mr. Torres encountered United States Border Patrol in Eagle Pass, Texas, where he expressed fear of being returned to Venezuela. See id. Mr. Torres was released on his own recognizance, pending his appearance before an Immigration Judge on December 13, 2023. See id. On December 13, 2023, the Immigration Judge dismissed removal proceedings against Mr. Torres, as the Department of Homeland Security had determined Mr. Torres was eligible for Temporary Protected States ("TPS"). See id. at 4. On March 4, 2024, Mr. Torres was granted TPS valid from October 16, 2024 through April 2, 2025. See id. Mr. Torres remained in the United States following expiration of his TPS. See id.

During that period, Mr. Torres was gainfully employed and was the sole financial provider for his family. See id. On October 13, 2025, Mr. Torres was convicted of a gross misdemeanor under Nev. Rev. Stat. 199.480 and received a sentence of 90 days. See id. On November 17, 2025, Immigration and Customs Enforcement ("ICE") lodged an immigration detainer with the Clark County Detention Center. See id. Upon completion of his sentence, Mr. Torres was taken into immigration custody on November 23, 2025. See id.

In February 2026, Mr. Torres filed an application for asylum and related relief. See id. at 5. On March 9, 2026, the Immigration Judge denied asylum as untimely but granted withholding of removal under INA § 241(b)(3). See id. The Immigration Judge entered a removal order designating Venezuela as the country of removal; no third country was identified in that order. See id. The Immigration Judge's removal order became administratively final on April 8, 2026.

On April 13, 2025, Mr. Torres received written notice identifying Mexico as a proposed third country of removal. See id. Upon receiving that notice, Mr. Torres immediately requested a hearing on fear-based claims, which has yet to be conducted. See id. Mr. Torres continues to be detained at Nevada Southern Detention Center in Pahrump, Nevada.

## IV.    LEGAL STANDARD

By way of background, the INA provides a "complex statutory framework of detention authority." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Specifically, four provisions empower the government "to detain non-citizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a)." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023) (footnotes omitted) (citation modified). Here, Respondents invoke 8 U.S.C. § 1231 to justify Mr. Torres' detention. See ECF No. 26. Therefore, 8 U.S.C. § 1231 is the only statutory provision relevant to this case.

### A.  Section 1231(a)

8 U.S.C. § 1231 governs the detention of non-citizens who are subject to final orders of removal. See 8 U.S.C. § 1231(a); see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing Jennings v. Rodriguez, 583 U.S. 281, 298 (2018)) (clarifying that § 1231(a) supplies DHS's detention authority once a non-citizen is subject to a final removal order). When a non-citizen "is ordered removed, [DHS] must physically remove [them] from the United States within a 90-day 'removal period.'" Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (quoting 8 U.S.C. § 1231(a)(1)(A)). During this period, "detention is mandatory." Id. (citing § 1231(a)(2)). A non-citizen's removal period begins on the latest of three dates: (i.) when their removal order becomes administratively final; (ii.) when a court that stayed deportation enters a final order regarding deportation; or (iii.) when they are released from non-immigration detention. See 8 U.S.C. § 1231(a)(1)(B); see also Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(B)).

As soon as a non-citizen's removal period lapses, they must be released subject to supervision, see 8 U.S.C. § 1231(a)(3), unless they fall into one of four statutory categories. See 8 U.S.C. § 1231(a)(6); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) (citations omitted) ("The post-removal-period detention statute applies to certain categories of [non-citizens]."). Pursuant to § 1231(a)(6), DHS may continue to detain a non-citizen who is: (i.) inadmissible; (ii.) removable under certain provisions of § 1227(a); (iii.) a risk to the community; or (iv.) unlikely to

comply with their removal order. See Johnson v. Arteaga-Martinez, 596 U.S. 573, 579 (2022) (quoting 8 U.S.C. § 1231(a)(6)). "Continued detention under this provision [triggers] the 'post-removal period.'" Guzman Chavez, 594 U.S. at 529.

Once a non-citizen enters the post-removal period, they are subject to detention insofar as their deportation is reasonably foreseeable. As written, the INA does not limit the length of post-removal-period detention. See 8 U.S.C. § 1231(a)(6). But a statute that authorizes "indefinite, perhaps permanent, detention" poses a "serious constitutional threat." Zadvydas, 533 U.S. at 699 (citation omitted). Accordingly, the Supreme Court has read an implicit limitation into § 1231(a)(6) based on "the Constitution's demands." Guzman Chavez, 594 U.S. at 529 (quoting Zadvydas, 533 U.S. at 689). Specifically, the Zadvydas Court "held that [a non-citizen] may be detained only for 'a period reasonably necessary to bring about that [non-citizen's] removal from the United States.'" Id. (quoting Zadvydas, 533 U.S. at 689). The Zadvydas Court also found it "practically necessary to recognize some presumptively reasonable period of detention… to guide lower court determinations," settling on a presumptively reasonable period spanning more than 90 days, but not "more than six months." Zadvydas, 533 U.S. at 701.

However, the six-month period is not a bright line rule, and the Supreme Court emphasized that the standard for continued post-removal detention requires "a significant likelihood of removal in the reasonably foreseeable future." Id. Accordingly, many courts have found detention periods shorter than six months to violate the INA and the Constitution because removal in the foreseeable future was not significantly likely. See e.g., Perez Canet v. Blanche, No. 2:26-CV-00223-APG-NJK, 2026 WL 1091763, at *6 (D. Nev. Apr. 22, 2026); Vijdani v. Mattos, No. 2:25-CV-02496-GMN-EJY, 2026 WL 560209, at *4 (D. Nev. Feb. 27, 2026) (collecting cases); Ghamoushi-Ramandi v. Noem, No. 26CV1758-LL-SBC, 2026 WL 984278, at *3 (S.D. Cal. Apr. 13, 2026) (collecting cases); D.S. v. Hernandez, No. 2:26-CV-01328-JNW, 2026 WL 1408517, at *3 (W.D. Wash. May 20, 2026).

**B. Withholding-only Proceedings and Third-Country Removal**

Concurrent to removal proceedings, noncitizens are also entitled to seek various

protections, including, *inter alia*, asylum, statutory withholding of removal, and withholding of removal under regulations implementing the Convention Against Torture ("CAT"). See 8 C.F.R. § 1240.11(c)(1). Some of these protections are discretionary, but others, like withholding of removal pursuant to CAT protections, are mandatory, meaning that the protection must be afforded if the conditions are met. See 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; see also Moncrieffe v. Holder, 569 U.S. 184, 187 n.1 (2013) ("[T]he Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility [for withholding of removal or CAT protections]."); Gutierrez-Alm v. Garland, 62 F.4th 1186, 1200–01 (9th Cir. 2023) ("The Convention Against Torture provides mandatory relief for any immigrant who can demonstrate that 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'") (quoting Hamoui v. Ashcroft, 389 F.3d 821, 826 (9th Cir. 2004)). Pursuant to the regulations implementing CAT, once a noncitizen seeking withholding of removal makes a showing of reasonable fear of persecution or torture should they be removed to a country, that noncitizen is placed in "withholding-only proceedings" before an immigration judge exclusively to seek withholding or deferral of removal. 8 C.F.R. §§ 208.31(b), (e); see also 8 C.F.R. § 1208.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings… shall be limited to a determination of whether the [noncitizen] is eligible for withholding or deferral of removal."). "When a [noncitizen] applies for withholding-only relief, he does so as to a particular country." Guzman Chavez, 594 U.S. at 535–36. It follows that an order granting CAT relief only prohibits the noncitizen's removal to that particular country; the noncitizen still "'may be removed at any time to another country where he or she is not likely to be tortured.'" Nasrallah, 590 U.S. at 582 (quoting 8 C.F.R. §§ 1208.17(b)(2), 1208.16(f)).

"Because the removal proceedings happen on one track, while withholding and CAT proceedings happen on another track, a situation may arise where the Government has an order of removal but no country that an IJ has authorized for that removal." Cavieres Gomez v. Mattos, No. 2:25-cv-00975-GMN-BNW, 2025 WL 3101994, at *2 (D. Nev. Nov. 6, 2025). In instances where the government cannot remove a noncitizen to the country listed on that individual's removal order, including, *inter alia*, instances where a grant of withholding bars removal of the

noncitizen to said country, the government is permitted to remove the individual to any country that will accept them. See 8 U.S.C. § 1231(b)(2)(E)(vii). These kinds of removals are known as "third-country removals."

Third-country removals are subject to the same protections mandated for removal or withholding-only proceedings. Specifically, the INA bars deportation to countries in which the noncitizens would face persecution or torture. See 8 U.S.C. § 1231(b)(3)(A) ("Notwithstanding paragraphs [b](1) and [b](2), the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion.").

## V.    DISCUSSION

Mr. Torres' detention is governed by 8 U.S.C. § 1231 because he is subject to a final order of removal. He has been granted withholding of removal from Venezuela, the country listed on the removal order. Respondents have sent Mr. Torres several notices identifying Mexico as a proposed third country of removal. Despite Mr. Torres' request for a hearing on fear-based claims, he has not received one.[1] Mr. Torres' removal order became administratively final on April 8, 2026, and his 90-day removal period ended on July 7, 2026. Mr. Torres is now in the post-removal period.

Respondents provide no indication that a hearing on fear-based claims will be provided for Mr. Torres. Nor do Respondents demonstrate a significant likelihood of removal in the foreseeable future. Indeed, Federal Respondents have not even responded to the Petition, and, thus, have provided no information to this Court regarding details of any possible removal. For these reasons, as explained in more depth below, the Court finds Mr. Torres is being held in violation of the INA and his due process rights under the Fifth Amendment, and further finds that Mr. Torres is entitled

---

[1] Because Respondents have failed to provide a hearing on fear-based claims despite Mr. Torres' timely request, Mr. Torres' 90-day removal period has not been extended. See Perez Canet, 2026 WL 1091763, at *5 (rejecting the suggestion that "the government's due process violation could support extending the removal period under § 1231(a)(1)(C)").

to meaningful notice and an opportunity to present fear-based claims to an immigration judge before a lawful third-country removal may occur.

### A. Due Process and INA Challenges to Detention

Because Mr. Torres is within the post-removal period, the Court must decide whether his ongoing detention is reasonable. Six months have not yet elapsed since Mr. Torres' removal order became final, so he is not entitled to the presumption of unreasonability set out in Zadvydas. 533 U.S. at 701. Nonetheless, the Court finds that Mr. Torres' detention is unreasonable because removal in the foreseeable future is not significantly likely.

First, removal in the foreseeable future is unlikely, if not impossible, due to Respondents' clear unwillingness to comply with regulations and due process. Since April, Respondents have been on notice of Mr. Torres' potential fear-based claims against removal to Mexico. See ECF No. 18 at 1 (acknowledging that "Petitioner expressed a fear of return to Mexico and requested a reasonable fear interview"). Instead of providing Mr. Torres with a hearing, Respondents have blatantly disregarded his request by issuing Notices of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g). See ECF No. 29, Exhibits 3,4. Respondents have thus failed to comply with their own regulations, which already place a heightened burden on a noncitizen detainee to raise an affirmative fear of removal. See Dep't of Homeland Security, et al. v. D.V.D. et al., 606 U.S. – (SOTOMAYOR, J., dissenting from grant of stay) (citing the Department of Homeland Security's internal guidance that only a noncitizen detainee that "states a fear of removal" unprompted will be given a screening interview, which will take place "within 24 hours of referral"). To date, Respondents have not provided any evidence that a hearing is being arranged for Mr. Torres, nor have they provided any legal justification for their ongoing failure to provide Mr. Torres with a hearing. See ECF No. 26 (failing to address why Respondents have not provided a hearing on fear-based claims). It is thus apparent to the Court that Respondents do not intend to provide Mr. Torres with a hearing on his fear-based claims against removal to Mexico in the foreseeable future. Without this hearing, removal is not only unlikely, but also impossible, leaving Mr. Torres in a "removable-but-unremovable limbo." Jama v. Immigr. & Customs Enf't, 543 U.S. 335, 347

(2005).

Additionally, it is evident that Respondents have not made any concrete plans to arrange for Mr. Torres' removal. Notwithstanding the fact that Mr. Torres *cannot* be removed to Mexico without a fear-based claims hearing, see infra, Respondents have failed to provide any evidence that they have sought acceptance from any other receiving countries, created travel documents, or made any travel arrangements at all for Mr. Torres. See ECF No. 27 at 3.

Finally, Respondents have failed to present the Court with any information or argument on the merits of the Petition. See ECF Nos. 18, 26 (solely arguing that Mr. Torres' petitions were moot, an argument this Court rejected, see ECF No. 22). Petitioner should not be "burdened by the impossible task of imagining and refuting" the justification for his detention. See Carlson, 186 F.2d at 188. "The imagination can hardly create a situation more incompatible with the spirit of our institutions that [] civil official[ls'] completely secret viewpoint[s] could be the basis of sustained imprisonment." Id. at 189. Respondents' "long and inadequately explained delay" in providing any justification for Petitioner's ongoing detention necessarily raises the presumption that he "is being illegally confined." Shadalo v. Mattos, No. 2:25-CV-02076-RFB-BNW, 2025 WL 3568234, at *6 (D. Nev. Dec. 14, 2025) (citation omitted). This presumption only bolsters the Court's conclusion that Respondents have failed to justify Petitioner's detention by demonstrating that his removal is, in fact, reasonably foreseeable.

Thus, on this record, this Court has "good reason to believe that there is no significant likelihood of [Petitioner's] removal in the reasonably foreseeable future," as he has shown that he cannot be removed to his country of origin based on the grant of withholding of removal to Venezuela, that he is not a citizen of another country, and that the government has not properly identified a third country that would accept him. Guzman Chavez, 594 U.S. at 529 (quoting Zadvydas, 533 U.S. at 701); see also Cavieres Gomez, 2025 WL 3101994, at *5 ("Petitioner is not required to 'show the absence of any prospect of removal—no matter how unlikely or unforeseeable,' only that that he has 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'") (quoting Zadvydas, 533 U.S. at 701–02) (citation omitted). The Court finds that Mr. Torres' ongoing detention violates the INA and due

process.

**B. Due Process Challenge to Third Country Removal**

The Court next turns to Petitioner's procedural claims regarding third country removal. Petitioner asserts that Respondents have attempted to remove Petitioner to Mexico, a country other than the one designated on his removal order and one where Petitioner fears persecution and harm. Petitioner challenges this third country removal as unlawful under the due process clause of the Fifth Amendment because he has not been afforded an opportunity to have his fear-based claims against removal to Mexico heard by an immigration court. See U.S. CONST. amend. V. Respondents again fail to offer any meaningful response to these challenges. Despite this failure to respond constituting consent to granting relief on this ground, the Court addresses the merits of Petitioner's argument.

A noncitizen detainee's right to notice and an opportunity to be heard before removal to a third country is well-supported by existing case law. "Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." Vilchez v. Holder, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing Lacsina Pangilinan v. Holder, 568 F.3d 708, 709 (9th Cir. 2009)). "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" Nguyen v. Scott, *et al*., No. 2:25-cv-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting Aden v. Nielsen, 409 F.Supp.3d 998, 1009 (W.D. Wash. 2019) (citing Mathews v. Eldridge, 424 U.S. 319, 349 (1976)). "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999). Accordingly, this Court, and many others, have found that the lack of procedural protections afforded to noncitizens subject to third country removal violates due process. See Perez Canet, 2026 WL 1091763, at *4 (collecting cases); see also Lopez v. Blanche, No. 2:26-CV-00281-JAD-EJY, 2026 WL 1266226, at *5–6 (D. Nev. May 8, 2026) (finding that ICE's third-country removal process fails to comply with due process altogether). Thus, the Court

holds that Petitioner has a due process right to receive meaningful notice and an opportunity to have his fear-based claim fully adjudicated before an immigration judge before DHS can deport him to Mexico, or any other third country.

**C. Scope of Relief**

Petitioner requests relief in the form of immediate release and injunctive relief barring the government from removing Petitioner to Mexico or any other third country until his fear-based claims have been fully adjudicated before an immigration judge (and any subsequent appeals). See ECF No. 23 at 22–23. When granting relief for a due process violation, a court may tailor the relief to the specific problem that gives rise to the violation. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

As it relates to Petitioner's continued detention, Zadvydas states that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700. In addition, Zadvydas provides that the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." Id. at 700. Accordingly, the remedy for a successful Zadvydas claim is generally release of the habeas petitioner under conditions of supervision. Because the Court finds that Petitioner's continued detention by Respondents violates Petitioner's Fifth Amendment due process rights, pursuant to the framework set forth in Zadvydas, the Court finds the appropriate remedy is immediate release, subject to reasonable terms of supervision under 8 U.S.C. § 1231(a)(3).

Petitioner also requests that the Court prohibit Respondents from removing him to Mexico (or any third country) without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal. For the reasons discussed above, the Court grants this requested relief: Respondents are ordered to provide adequate notice to both Petitioner and his counsel of any third country removal and are enjoined

from removing Petitioner to Mexico or any other third country without affording due process an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal, with a hearing before an immigration judge.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## VI.     CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Petition (ECF Nos. 23, 29) is **GRANTED**. Respondents must **RELEASE** Petitioner on **July 28, 2026** between the hours of **12:00 P.M. and 3:00 P.M.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE**.

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to Mexico, or any other third country, without providing Petitioner with (1) adequate notice of intent to seek removal to a third country and (2) due process in the form of reopened immigration court proceedings to seek fear-based relief from removal, with a hearing before an immigration judge.

**IT IS FURTHER ORDERED** the Parties shall file a joint status report by **July 30, 2026**, confirming Respondents' compliance with this Order, including: (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** July 27, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**